UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY EDWARD FIELDING,<br><br>Defendant. | NO.  CR-05-214-RHW<br><br>**ORDER GRANTING THE GOVERNMENT'S MOTION FOR REVIEW OF THE ORDER SETTING CONDITIONS OF RELEASE** |

Before the Court is the Government's Motion for Review of the Order Setting Conditions of Release (Ct. Rec. 23).  A hearing was held on the motion on December 16, 2005.  Defendant was present and represented by Amy Rubin and Kathleen Moran.  The Government was represented by Russell Smoot.  The Government asks the Court to review Magistrate Imbrogno's Order Setting Conditions of Release, filed December 9, 2005.

DISCUSSION

**A.    Standard of Review**

Pursuant to 18 U.S.C. § 3145(a)(1) the Government may seek a motion for revocation of a magistrate's order releasing a Defendant.  The district court conducts its own *de novo* determination of the facts paying no deference to the magistrate judge's findings. *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990).  Ultimately, the district court must decide the propriety of detention without giving any deference to the magistrate judge's conclusion.  *Id.*

*///*

**ORDER GRANTING THE GOVERNMENT'S MOTION FOR REVIEW OF THE ORDER SETTING CONDITIONS OF RELEASE ~ 1**

**B**.    **Bail Reform Act**

The Bail Reform Act mandates that the Court shall order the pre-trial release of a person being charged with a crime on their personal recognizance,  upon the execution of an unsecured appearance bond, or released with conditions, unless it cannot be assured that the person will appear in Court to defend themselves or that the person will not endanger the safety of others.  18 U.S.C. § 3142(b) & (c). Generally under federal law, a person arrested for a noncapital offense shall be admitted to bail and only in rare circumstances should release be denied. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).  The least restrictive condition or combination of conditions that will reasonably assure the appearance of the person must be applied. *Id.*  If the Court finds that no condition or combination of conditions can reasonably assure the appearance of the person or assure the safety of any other person and the community, the Court must order the person detained until trial.  18 U.S.C. § 3142(d).  Doubts regarding the propriety of release should be resolved in favor of the defendant. *Motamedi*, 767 F.2d at 1405.

In this case, the court must hold a detention hearing because Defendant has been charged with a crime under the Controlled Substance Act, and he is facing a maximum penalty that is greater than 10 years.  18 U.S.C. § 3142(f)(1); *see also United States v. Twine*, 344 F.3d 987 (9th Cir. 2003).  In determining whether Defendant should be released, the court considers the factors listed in 18 U.S.C. § 3142(g) including the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

**C.    Analysis**

The Government is not contending that Defendant poses a specific, articulable risk to the safety of the community.  Instead, the Government asserts that there are no conditions that can be imposed which would assure the

**ORDER GRANTING THE GOVERNMENT'S MOTION FOR REVIEW OF THE ORDER SETTING CONDITIONS OF RELEASE ~ 2**

1  appearance of Defendant at future proceedings.  The Court agrees.

2      Defendant entered in the United States through the Oroville Port-of-Entry.

3  He stated that he was going to Seattle and Portland to shop for recreational

4  vehicles.  Instead, he traveled around Omak and Okanogan, including Soap Lake,

5  renting hotel rooms in Omak on October 20, 2005, and October 24, 2005.  During

6  his travels, he performed a large number of evasive maneuvers, possibly in an

7  attempt to identify law enforcement surveillance.

8      On December 1, 2005, Defendant again rented a room in Omak, and was

9  observed driving a rental vehicle in the Soap Lake area.  He was observed meeting

10  a float plane.  After a brief meeting, Defendant's vehicle was observed leaving the

11  area.  He was eventually stopped, and the vehicle was searched.  In it were seven

12  hockey-style duffle bags, containing in excess of 100 Kilograms of marijuana.

13      These facts indicate prior planning and significant involvement on the part

14  of Defendant.  The conduct in October indicates either a previous act of smuggling

15  or reconnaissance for the trip on which the Defendant was arrested.  Indeed, the

16  case agent working on this case stated that Defendant's activity surrounding the

17  current charge shows a high level of sophistication and involvement. Defendant is

18  being charged with a serious offense.  Based on the quantity of drugs that were

19  found, Defendant is facing a mandatory minimum five year sentence.  Defendant

20  was caught in sole possession of the drugs.  Thus, the weight of the evidence

21  against Defendant is significant, although the Court recognizes that this the least

22  important factor under the statute.  *See Motamedi*, 767 F.2d at 1408.

23      Defendant is a Canadian citizen with no ties to the United States. Three

24  months ago, Defendant purchased a $239,000 house and moved to Kamloops,

25  British Columbia, from Vancouver, B.C.  For the past two years, prior to moving

26  to Kamloops, Defendant's wife and children were living with her parents, while

27  Defendant was living elsewhere.  The circumstances of this separation are

28  unexplained but lend doubt to the significance of family ties as a factor favoring

**ORDER GRANTING THE GOVERNMENT'S MOTION FOR REVIEW OF
THE ORDER SETTING CONDITIONS OF RELEASE ~ 3**

release. Defendant reports that there is approximately $50,000 equity in their house.

Defendant reports that he has been self-employed for the last year and a half, operating a business called Muscle Cars and Classics that earns approximately $3000 a month. It is not clear where this business is located. In like manner, the source of income and work is not confirmed. Defendant also appears to have some connection to a somewhat sophisticated drug trafficking operation—at least one that involves the use of airplanes to smuggle marijuana into the United States. The facts of the offense indicate that Defendant was involved in the smuggling of the marijuana as well as in its distribution after arrival in the United States.

In addition, the Court notes that on December 14, 2005, Defendant requested that the Magistrate amend the conditions of release to require Defendant to post a $30,000 cash bond, instead of a $100,000 cash bond. Given that there is approximately $50,000 equity in his house, a $30,000 cash bond would not be a significant incentive to appear at future court proceedings.

The defense argues that Canadian citizenship is irrelevant to the release decision. The Government argues that Canadian citizenship is determinative in a serious drug case. The Court believes that the truth is somewhere in the middle. The Court's experience has been that there is a higher incidence of failure to appear with Canadian defendants than with residents of the United States released on conditions prior to trial. This anecdotal experience is born out by statistics from the Western District of Washington. In the December 5, 2005 issue of *News and Views*, a biweekly newsletter of the United States Probation and Pretrial Services System the following information is revealed:

> In the Western District of Washington, we conduct a significant number of investigations on Canadian defendants, often for drug-related offenses-especially the smuggling of "B.C Bud," a potent form of marihuana brought into Washington from British Columbia . . . . When considering risks involving our Canadian neighbors, risk of nonappearance is a significant concern. If a defendant is released back to Canada, the temptation to avoid future court hearings can be great, and

**ORDER GRANTING THE GOVERNMENT'S MOTION FOR REVIEW OF THE ORDER SETTING CONDITIONS OF RELEASE ~ 4**

extradition of Canadian defendants can be a lengthy, uphill process. The Canadian nonappearance rate has been shockingly high of a number of years in our district as shown in the table  below."

| Year | Canadians Released | Recommendation for Release | FTA Warrants Issued | Nonappearance Rate |
|------|--------------------|-----------------------------|---------------------|--------------------|
| 2003 | 21 | 17 | 9 | 42.9% |
| 2004 | 23 | 20 | 7 | 30.4% |

Timothy W. McTighe, *Washington Western Pretrial Services Collaborates With Canada*, News & Views, Dec. 2005, at 5, 5.

The Court's own experience and the statistics from the Western District establish to the satisfaction of the Court that alienage is relevant.  The inability of the Court to supervise compliance with terms of release for Canadian defendants compels the Court to assure itself that appearance of this Defendant at future Court appearances is more than likely.  The Court has in the past released Canadian defendants based on the particular circumstances of the defendants, including their family ties, employment and financial circumstances, ties to the United States, and general trustworthiness established by the record.

 In this case, the Court is not satisfied that enough is known and confirmed about Defendant and his release plan to overcome the presumption imposed by the statute and the evidence presented by the Government.  The penalty faced by Defendant is significant.  The evidence against Defendant is strong.  The offense conduct is more sophisticated than normal and appears to include more than a single occurrence.  The employment and income information is unconfirmed.  The family connections are not particularly strong given the two year separation.  There are no ties to the United States.  Defendant is a citizen of Canada.

The Court finds that the Government has met its burden of proving by a preponderance of evidence that Defendant poses a risk of flight and that no condition or combination of conditions will reasonably assure the appearance of

**ORDER GRANTING THE GOVERNMENT'S MOTION FOR REVIEW OF THE ORDER SETTING CONDITIONS OF RELEASE ~ 5**

Defendant at future court proceedings.

Accordingly, **IT IS HEREBY ORDERED:**

1.    The Government's Motion for Review of the Order Setting Conditions of Release (Ct. Rec. 23) is **GRANTED**.

2.    The Government's Motion to Stay Order of Release (Ct. Rec. 22) is **GRANTED**.

3.    Defendant shall be held in detention pending disposition of this case, or until further order of the Court.

4.    Defendant is committed to the custody of the U.S. Marshal for confinement separate, to the extent practicable, from persons awaiting or serving sentence or being held in custody pending appeal.

5.    Defendant shall be afforded reasonable opportunity for private consultation with his counsel.

6.    Defendant's Motion for Reconsideration re: Order on Motion for Detention (Ct. Rec. 20) is **DENIED as moot**.

7.    The Government's Motion to Expedite Hearing on Motion to Stay Order (Ct. Rec. 25) is **DENIED as moot.**

8.    The Government's Motion to Expedite Hearing on Motion for Review of the Conditions of Release (Ct. Rec. 26) is **DENIED as moot**.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and to provide copies to counsel and the U.S. Marshal.

**DATED** the 16th day of December, 2005.

s/ ROBERT H. WHALEY
Chief United States District Judge

Q:\CRIMINAL\2005\Fielding\release.ord.wpd

**ORDER GRANTING THE GOVERNMENT'S MOTION FOR REVIEW OF THE ORDER SETTING CONDITIONS OF RELEASE ~ 6**